UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER DICKINSON,

Plaintiff,

v.

WARREN BROWN, *et al.*,

Defendants.

Case No. C17-868RSL

ORDER DENYING MOTION
FOR PRELIMINARY
INJUNCTION

This matter comes before the Court on "Plaintiff's Motion for Preliminary Injunction." Dkt. # 5. After considering the parties' memoranda and the record before the Court, plaintiff's motion for a preliminary injunction is DENIED.

## I. BACKGROUND

Though this case evokes expressive and religious freedoms rooted in the Constitution, it essentially arises out of a disagreement over the loudness at which a person's voice becomes disruptive. Plaintiff Chris Dickinson went to a courtyard on the campus of North Seattle College ("the College") to preach, but after at least one complaint, he was forced to leave when school security determined he was preaching so loudly that it was disrupting campus educational activities.

Plaintiff presents a sure-fire winning case wherein his speech about his religious views, presented in an open forum on campus, was shut down and prohibited by one anonymous complaint, which led the College to banish plaintiff and his viewpoint from its campus forever.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 1

However, there is another side to the story. That includes declarations from two College employees and two College security officers that say plaintiff was speaking so loudly that it disrupted campus educational activities, that he was warned several times to lower his voice, and only when he refused to do so was he told he had to leave or he would be removed from the campus.

Although the Court declines to grant Mr. Dickinson's motion, the Court sees a different picture than the all-or-nothing circumstances portrayed in the complaint and this motion's briefing. Surely there is a time and manner for preaching in the campus courtyard that can satisfy Mr. Dickinson's desire to spread his message without disrupting campus educational activities. The College's security director indicates Mr. Dickinson could be allowed back, and Mr. Dickinson's filings repeatedly state he does not seek to be disruptive. Unless the parties are determined to litigate a dispute that is more or less about noise, the Court encourages them to confer and explore solutions for allowing Mr. Dickinson to preach on campus in a nondisruptive way. The Court is willing to arrange a settlement conference between the parties using a United States Magistrate Judge as a neutral facilitator. The parties should confer and decide if they want to pursue this avenue toward resolution.

## A. State and College Policies

Before exploring the dispute that gave rise to this case, the Court will briefly summarize the relevant state and College policies covering disruptive activities on campus. Disrupting campus educational activities violates state and College policies on facility use—policies that also seek to accommodate noncollege groups' First Amendment activities. Chapter 132F-142 of the Washington Administrative Code, titled "Use of Facilities for First Amendment Activities," begins with a statement of purpose that reads in part:

> The public character of the colleges does not grant to individuals the right to substantially interfere with, or otherwise disrupt the normal activities for and to which the colleges' facilities and grounds are dedicated. Accordingly, the colleges are designated public forums opened for the purposes recited herein and further subject to the time, place, and manner provisions set forth in these rules.
> The purpose of the time, place and manner regulations set forth in this policy is to establish procedures and reasonable controls for the use of college facilities for

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 2

both college and noncollege groups. It is intended to balance the colleges' responsibility to fulfill their mission as state educational institutions of Washington with the interests of college groups and noncollege groups who are interested in using the campus for purposes of constitutionally protected speech, assembly or expression.

Wash. Admin. Code. § 132F-142-030. The chapter goes on to outline certain limitations on facility use, including the following rules concerning noise and disruption:

> (2) Any sound amplification device may only be used at a volume which does not disrupt or disturb the normal use of classrooms, offices or laboratories, or any previously scheduled college activity.
> . . .
> (7) The activity must not substantially interfere with educational activities inside or outside any college building or otherwise prevent the college from fulfilling its mission and achieving its primary purpose of providing an education to its students. The activity must not substantially infringe on the rights and privileges of college students, employees or invitees to the college.

Wash. Admin. Code § 132F-142-040.

The Seattle Colleges, which include North Seattle College and three others, have adopted a policy echoing those provisions. The policy, titled "Use of Seattle College District Facilities by College Groups and Non-College Groups for First Amendment Activities," outlines the following rule:

> The public character of the district does not grant to individuals an unlimited license to engage in activity which limits, interferes with, or otherwise disrupts the normal activities for and to which the college's buildings, facilities and grounds are dedicated and said buildings, facilities and grounds are not available for unrestricted use by non-college groups. . . . It is intended to balance the district's responsibility to fulfill its mission as a state educational institution of Washington with the interests of non-college groups or college groups who are interested in using the campus for purposes of constitutionally protected speech, assembly or expression.

Seattle College District Policy No. 270.

If persons who are not students, faculty, or staff violate any College policy, the violator "will be advised of the specific nature of the violation, and if they persist in the violation, they will be requested . . . to leave the college property." Wash. Admin. Code § 132F-136-050(1). In

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 3

those cases, the request to leave is treated as a revocation of permission to be on campus, and reentry subjects the person to arrest under state and municipal trespass provisions. Id.

If a person is trespassed, there are procedures for appeal. With the College, they may petition for review within ten days, and the administration's subsequent decision constitutes the College's final decision. Id. § 132F-136-050(3). That final decision is then reviewable in state court under Washington's Administrative Procedure Act, RCW 34.05.514(2) ("For proceedings involving institutions of higher education, the petition [for review] shall be filed either in the county in which the principal office of the institution involved is located or in the county of an institution's campus if the action involves such campus.").

**B.     Facts**

This case stems from events on the afternoon of Monday, October 3, 2016, when Chris Dickinson, a Christian whose faith moves him to evangelize about his beliefs, went to North Seattle College to preach his message. He checked in with campus security, and proceeded to the campus courtyard. The campus is condensed with relatively little space between buildings, and the courtyard is located more or less in the middle of the academic and administrative buildings. The adjacent buildings include the library and other buildings where classes meet, where students study, and where College employees work. On the day Mr. Dickinson came to campus, fall quarter classes were in session. In the courtyard, there is a sign that reads "First Amendment Activities" and designates the courtyard as an area where people, including nonstudents, can express their opinions.

The parties agree that Mr. Dickinson started preaching in the courtyard sometime after noon; that security personnel related a student complaint and spoke to Mr. Dickinson several times about his tone and volume being disruptively loud; that he was offered the options of speaking to bystanders one-on-one or handing out literature instead; and that security ultimately asked him to leave and escorted him from the property. The security personnel with whom Mr. Dickinson interacted were Darryl Johnson, Director of Campus Security, and Alex Maldonado, a campus security officer.

Mr. Dickinson's account suggests he was not given the option of preaching more quietly, and that in Mr. Dickinson's first interaction with security, Director Johnson said he could only speak to people individually or hand out literature. Director Johnson and Mr. Maldonado both report independently asking Mr. Dickinson to keep his voice down so as not to disrupt College activities. Director Johnson recounts that he first asked Mr. Dickinson to keep his voice down after hearing him preaching loudly. Mr. Maldonado recounts asking Mr. Dickinson to keep his voice down after a female student complained of a man who "was loud, being aggressive[,] and making her feel uncomfortable." Maldonado Aff., Dkt. # 12-4 ¶ 3. Director Johnson and Mr. Maldonado both recount that it was only after multiple warnings that Director Johnson told Mr. Dickinson he could not preach in that fashion and ultimately asked him to leave. See id. ¶ 4 ("Dickinson kept speaking loudly to the extent that it disrupted normal activities of the campus and he would cease and comply temporarily, but then always resume preaching loudly.").

The parties' chief disagreement, however, is over the volume of Mr. Dickinson's voice and whether he was being disruptive. Mr. Dickinson recounts that he was "preaching with [his] natural voice . . . [and] only sp[eaking] loud enough to be heard by those in the outdoor courtyard." Dickinson Aff., Dkt. # 5-1 ¶ 23. Mr. Dickinson clearly did not perceive the preaching as loud or disruptive.[1] Harley Kim McCoy, a student in the courtyard that day, likewise did not perceive the preaching as "overly loud" or disruptive. McCoy Aff., Dkt. # 5-5 ¶¶ 23, 51, 74.

Director Johnson, Mr. Maldonado, and two other College employees describe Mr. Dickinson's volume differently. Director Johnson and Mr. Maldonado recall hearing Mr. Dickinson from the campus security office, which is about 150 feet from the courtyard and separated by columns and trees. Director Johnson describes Mr. Dickinson as "yelling loudly"

---

[1] See Dickinson Aff. ¶ 25 ("I was not loud. I was not shouting."); id. ¶ 29 ("I was not loud. I was only speaking loud enough to be heard by those in the courtyard. . . . I wasn't doing anything out of the ordinary."); id. ¶ 31 ("I wasn't loud . . . ."); id. ¶ 41 ("I did not want to be disruptive. I just wanted to speak loud enough to be heard."); id. ¶ 50 ("I only spoke loud enough to be heard in the courtyard."); id. ¶ 59 ("I did not believe preaching itself is disruptive without considering noise level.").

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 5

and his voice as "unnaturally loud and reverberat[ing] within the courtyard." Johnson Aff. ¶ 9. Star Conrad and Lori Whitish are both College employees who were working with the windows closed on the second floor of an adjacent building. Ms. Conrad recounts that Mr. Dickinson was "very loud," that "[h]e went on yelling for some time," and that "[h]e was loud enough to disturb [her] work and the work of [her] staff." Conrad Aff., Dkt. # 12-2 ¶ 4. Ms. Whitish describes being "startled and alarmed," Whitish Aff., Dkt. # 12-1 ¶ 8, and that "[t]he volume of his voice was loud enough to disrupt [her] work," id. ¶ 7. The two women were prepared to call security when they saw Director Johnson and Mr. Maldonado addressing the situation.

As noted, Director Johnson ultimately asked Mr. Dickinson to leave and then informed him that he was trespassed from campus. The next day, the College sent Mr. Dickinson a notification, informing him he had been trespassed pursuant to Wash. Admin. Code § 132F-136-050 for violating College policy against "engag[ing] in activity which limits, interferes with, or otherwise disrupts the [College's] normal activities." See Trespass Notification (Ex. M), Dkt. # 5-13 (quoting Seattle College District Policy No. 270). Before receiving the letter, Mr. Dickinson inquired about returning. In response, an administrator sent him an email citing violations of two district facilities policies and directing further questions to Director Johnson.

Through counsel, Mr. Dickinson sent the College a demand letter requesting he be allowed to return and preach. The College declined to review its decision, citing Mr. Dickinson's refusals to stop disrupting classes and campus activities in violation of College policy.

Mr. Dickinson then filed a complaint in the above-captioned matter against College President Warren Brown and Director Johnson. He also filed the instant motion for a preliminary injunction seeking to enjoin President Brown, Director Johnson, or anyone else from applying the disruption policy based on individual complaints generally and from enforcing the trespass notification against Mr. Dickinson personally.

## II. DISCUSSION

The Court evaluates a motion for a preliminary injunction under the familiar standard that weighs (1) the likelihood of a plaintiff's success on the merits; (2) the possibility of irreparable

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 6

injury without relief; (3) the balance of hardships to the parties; and (4) whether an injunction would advance the public interest. See Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994); Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980). Likelihood of success on the merits is the most important factor, and a party seeking preliminary relief will not succeed without passing that threshold inquiry. Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).

As noted, Mr. Dickinson asserts two claims challenging the constitutionality of the College's policy and actions. First, he asserts the College violated his First Amendment right to free speech when campus security enforced the College's disruption policy and stopped him from preaching in the manner he desired. Second, he asserts the College's policy of regulating speech that is "disruptive to the learning environment" is void for vagueness.

**A.     First Amendment Claim**

The First Amendment prohibits government entities from "abridging the freedom of speech." U.S. Const. amend. I. Standards applied to government regulation of speech vary depending on the speech, forum, and regulation, but for this motion's purposes, the parties agree that Mr. Dickinson sought to express protected speech in a designated public forum, Dkt. # 5 at 13–15; Dkt. # 12 at 6, and that the College regulated his speech in a content-neutral way, see Dkt. # 5 at 16 n.2. In such cases, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions . . . are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1988) (internal marks and citation omitted).

"[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)). The regulation "need not be the least restrictive or least intrusive means of [serving the interest]," id. at 798, but the regulation may not "burden substantially more speech than is necessary," id. at 799. A regulation fails to leave open ample alternative channels of communication if it "effectively

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 7

prevents a speaker from reaching his intended audience." Edwards v. City of Coer d'Alene, 262 F.2d 856, 866 (9th Cir. 2001).

Here, the College's policy and its application satisfy the requirement of narrow tailoring, and leave open ample alternative channels for communication. First, the Court agrees that the College has a significant interest in controlling excessively loud noise that interferes with or disrupts its mission of serving and teaching students. See Dkt. # 12 at 8; see also Widmar v. Vincent, 454 U.S. 263, 267–68 n.5 (1981) ("A university's mission is education, and decisions of this Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities.").

The disruption policy is narrowly tailored to serve that interest. By its terms, the policy only regulates activity that "limits, interferes with, or otherwise disrupts the normal activities for and to which the college's buildings, facilities and grounds are dedicated." Seattle College District Policy No. 270. The policy explicitly seeks to balance its operations and educational activities with noncollege groups' desires to engage in forms of expression. That standard does not burden substantially more speech than is needed to promote the interest in maintaining an educational and work environment that is not excessively loud. See Ward, 491 U.S. at 791.

The record does not show the policy was applied to prohibit more speech than necessary in Mr. Dickinson's particular case. Two security employees, one female student, and two administrative employees found Mr. Dickinson to be disruptively loud. The female student felt compelled to report it to security, and the employees were planning on doing so until they discovered the noise was being addressed. Mr. Dickinson clearly did not perceive his own voice as being disruptively loud,[2] see Compl., Dkt. # 1 ¶ 57 ("He did not understand how his speech was disruptive."), but in an environment like a college campus, whether noise or speech is disruptive is contextual. It varies based on the time of day, the volume of ambient noise, and the

---

[2] Based on Dickinson's factual allegations, the core of his disagreement is with the determination that he was disruptively loud. That is, he appears to simply assert he actually complied with College policy, but Dickinson does not make that argument here and did not seek substantive state-court review of the College's final decision pursuant to Washington's Administrative Procedure Act, RCW 34.05.514(2).

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 8

activities occurring on campus. The same volume of noise may be unnoticeable during a busy lunch hour but still shrill and distracting while class is underway. Here, a number of observers independently considered the volume of Mr. Dickinson's voice, in context, to be loud enough that it was disruptive. A recording of Mr. Dickinson in the courtyard filed with the Court does not dispel those impressions. See Ex. F, Dkt. # 5-6. Narrow tailoring does not require Director Johnson to have precisely detected the maximal decibel level and tone at which classes and nearby work would remain undisrupted. See Ward, 491 U.S. at 798. The record before the Court does not indicate a substantially greater limit on Mr. Dickinson's speech than necessary to avoid disruption.

Second, the College's disruption policy and its application left open ample alternative channels for communication. Mr. Dickinson was given the option of speaking at a more conversational volume or handing out literature. Mr. Dickinson asserts that these alternatives were inadequate, but individual conversations appear to be an otherwise adequate and even valuable part of Mr. Dickinson's endeavor to spread his message. See Compl. ¶¶ 18, 53. On the record before the Court, the alternatives available allowed Mr. Dickinson to engage in the same activity only at a lower volume. The record does not indicate Mr. Dickinson was effectively prevented from reaching his intended audience. See Edwards, 262 F.2d at 866.

The College's mechanism for enforcing its determination that Mr. Dickinson violated College policy—that is, that Mr. Dickinson was trespassed—does not change the Court's conclusion. The provision that empowers the College to invoke trespass remedies applies to persistent violations of any College policy, and that provision is invoked only after the potential violator has been warned. See Wash. Admin. Code § 132F-136-050(1). The record before the Court indicates that Director Johnson only invoked the trespass remedy once he determined that Mr. Dickinson repeatedly violated College policy. In contrast, whether the disruption policy and its application run afoul of the First Amendment depends on the terms of the policy and Director Johnson's substantive application of those terms to Mr. Dickinson's speech. As explained above, the record before the Court does not indicate that the policy or its application violates the

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 9

First Amendment. The Court accordingly concludes that Mr. Dickinson's First Amendment claim is not likely to succeed on the merits.

**B.     Vagueness Claim**

Due process prohibits subjecting an individual to "a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015).

First, the College's actions do not violate the notice requirements of due process. As noted, the enforcement mechanism that allows the College to invoke the criminal law—here, trespass—requires that the potential violator "be advised of the specific nature of the violation [of College policy]," and they are only trespassed "if they persist in the violation." See Wash. Admin. Code § 132F-136-050(1). Insofar as the trespass provision is the actual criminal law applied in this case, it "gives ordinary people fair notice of the conduct it punishes," Johnson, 135 S. Ct. at 2556, because it requires they be warned of any underlying policy violation.

In addition, the Supreme Court has considered similar disruption ordinances and did not find them to be unconstitutionally vague. In particular, the Court in Grayned v. City of Rockford, 408 U.S. 104 (1972), considered a vagueness challenge to an ordinance that proscribed "willfully mak[ing] or assist[ing] in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof," id. at 107–08 (citation omitted). The ordinance was "[d]esigned . . . 'for the protection of Schools,' [and] forb[ade] deliberately noisy or diversionary activity that disrupt[ed] or [wa]s about to disrupt normal school activities." Id. at 110–11. The Supreme Court determined the ordinance's terms made it sufficiently clear what conduct was prohibited. Here, the Court is likewise satisfied that the College's policy prohibiting "activity which limits, interferes with, or otherwise disrupts the [College's] normal activities" sufficiently notifies individuals of what conduct it covers.

Second, the disruption policy is not standardless to the point of inviting arbitrary enforcement. Mr. Dickinson argues that the policy invites arbitrary enforcement because its application depends on subjective complaints. The contextual nature of maintaining a learning

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 10

environment, however, necessarily involves accounting for noise's impact on listeners, and the Supreme Court has relied on listeners' reactions to excessive noise as justifications for speech regulations. See Ward, 491 U.S. at 800 (citing "complaints about excessive volume" in tailoring analysis of sound regulations); Grayned, 408 U.S. at 112 (explaining school-disturbance ordinance was not unconstitutionally vague in part because the "prohibited disturbances [were] easily measured by their impact on the normal activities of the school"). Additionally, Mr. Dickinson does not argue in this motion that the standard is enforced based on listeners' objections to a message's content. See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 789 (9th Cir. 2008). It does not invite arbitrary enforcement to allow campus security to consider complaints when determining whether a speaker is being disruptive, and the record does not indicate that Director Johnson arbitrarily enforced the policy in this case. For those reasons, the Court concludes Mr. Dickinson's vagueness claim is not likely to succeed on the merits.

Because the Court has concluded that, based on the record before the Court, Mr. Dickinson has not met the threshold requirement for a preliminary injunction of showing a likelihood of success on the merits, the Court need not consider the other factors for preliminary relief. See Garcia, 786 F.3d at 740.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction, Dkt. # 5, is DENIED.

DATED this 28th day of December, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 11